UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RAVEN MORGAN ON BEHALF OF JC | * | CIVIL ACTION NO. 16-11858 |
| | * | |
| VERSUS | * | SECTION: "F"(1) |
| | * | |
| NANCY A. BERRYHILL, ACTING | * | JUDGE MARTIN L. C. FELDMAN |
| COMMISSIONER OF THE SOCIAL | * | |
| SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************** | * | |

## REPORT AND RECOMMENDATION

The plaintiff, Raven Morgan on behalf of the minor J.C. ("J.C."), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying J.C.'s claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 14) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 16) be GRANTED.

## Procedural Background

J.C. applied for SSI on September 4, 2013, asserting a disability onset date of January 1, 2011. He alleged the following illnesses, injuries or conditions:  dyslexia and attention deficit hyperactivity disorder (ADHD). R. at 48.  His claim was denied by the state agency on February 12, 2014, and a notice of the decision was sent the following day. According to the Disability Determination Explanation, the state agency concluded that "[t]his child's condition results in

some limitations in the ability to function, but those limitations are not severe enough to be considered disabling . . . because his/her condition does not cause marked and severe functional limitations." R. at 54.

J.C. obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 8, 2015, in New Orleans, Louisiana. R. at 29. On February 4, 2015, the ALJ issued an adverse decision. The Appeals Council denied review on April 23, 2016.

On June 27, 2016, J.C. filed a Complaint in this Court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative record. (Rec. Docs. 11, 12). The parties filed cross-motions for summary judgment. (Rec. Docs. 14, 16). J.C. is represented by counsel.

**Evidence in the Record**

At the time of the hearing before the ALJ on January 8, 2015, J.C. was eight years old. R. at 32.  Raven Morgan, J.C.'s mother, testified on his behalf and explained that J.C. was diagnosed with ADHD in September 2013 and began taking Vyvanse daily.  R. at 35-36. Mr. Morgan testified that even with the medication, J.C. does not listen, and while his sudden movements may have decreased, "his mouth still goes and goes and goes and goes." R. at 39. She had discussed increasing the dosage of Vyvanse, but J.C.'s doctor explained that this would also increase side effects. R. at 39. Ms. Morgan said that J.C. already stuffers with upset stomach. R. at 39. She also testified that he suffers depression as a side effect. R. at 42.

Ms. Morgan explained that J.C. stopped taking his medication in the summer of 2014 because he was spending the summer with his grandparents and she decided that he should have a break and "actually have a summer." R. at 36-37. Ms. Morgan indicated that J.C.'s behavior was

not bad while he was with his grandparents, likely because they allow him to "do whatever." R. at 37.

At home, Ms. Morgan said that J.C. does not do his chores and never completes anything when asked. R. at 38. When he does not do so, he will not be allowed to play video games or watch TV. R. at 41. She said that she has to remind him to wash his face and brush his teeth. R. at 44. She said that he will run into the street without looking out for cars. R. at 44.

Ms. Morgan testified that J.C. becomes angry and threatens the family dog. R. at 38. Asked to explain a typical Saturday, Ms. Morgan said that J.C. jumps around, fights with his three year old sibling, and fusses. R. at 40. She said that he's often bullied and this makes him "want for suicide." R. at 40. She said that she does not allow him to interact too much with kids his age because it is easy for him to be pushed, and then he wants to hurt himself. R. at 40. Or, when he is mad at others, he wants to hurt the baby. R. at 40-41. Ms. Morgan said that J.C. threatens to hurt himself or others about twice a month. R. at 43. He has been working on his anger with his counselor. R. at 42.

With regards to his behavior in school, Ms. Morgan testified that J.C. has not received any suspensions or detentions in the current school year. R. at 43. She said that he takes about two hours to do his homework and that she has to constantly threaten him to get it done all at once. R. at 44.

Ms. Morgan admitted that J.C. is in regular education and stated that his school does not have special education. R. at 34. She testified that for over a year, J.C. had been seeing a therapist who could come and visit with J.C. three times a week. R. at 34. Ms. Morgan testified that the therapist assists with everything that J.C. needs, including his homework. R. at 34.

When submitting J.C.'s disability application, Ms. Morgan filled out a Function Report for J.C. in which she marked that he has no limitations in ability to communicate or ability to progress in learning. R. at 140-41. She indicated that his impairments affect his behavior with others and that he does not get along with school teachers. R. at 143. However, she noted that he has friends his own age, can make new friends, generally gets along with her and other adults, and plays team sports. R. at 143. She noted that J.C.'s ability to pay attention and stick with a task was limited. R. at 145. She noted that he cannot keep busy on his own or finish things he starts, but she noted that he works on arts and crafts projects, completes homework, and completes chores most of the time. R. at 145.

School Records

On December 11, 2013, Jan Arnold, J.C.'s second grade math, English language arts, and social living teacher, filled out a teacher questionnaire sent by Disability Determination Services. R. at 149. She was asked to consider certain characteristics in each of the six functional domains and rate J.C. on the following five point scale: 1 ("no problem"), 2 ("a slight problem"), 3 ("an obvious problem"), 4 ("a serious problem"), 5 ("a very serious problem").

In the area of acquiring and using information, Ms. Arnold marked J.C. as having a slight problem comprehending oral instructions, understanding school and content vocabulary, comprehending and doing math problems, learning new material, and recalling and applying previously learned material. R. at 150. She marked J.C. as having an obvious problem reading and comprehending written material, understanding and participating in class discussions, and applying problem-solving skills in class discussions. R. at 150. She marked J.C. as having a serious problem providing organized oral explanations and adequate descriptions and expressing ideas in written form. R. at 150. Ms. Arnold noted that J.C. "works well independently but does need

redirecting at times to keep him focused and on task." R. at 150. She added that J.C. "will ask for help when needed—such as when he doesn't understand direction, know a word, or is unsure what a question is asking." R. at 150.

In the area of attending and completing tasks, Ms. Arnold marked J.C. as having no problems carrying out single-step instructions, waiting to take turns, or working without distracting self or others. R. at 151. She marked J.C. as having a slight problem paying attention when spoken to directly, focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, changing from one activity to another without being disruptive, organizing own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. R. at 151. She did not add any narrative remarks to this section.

In the area of interacting and relating to others, Ms. Arnold marked J.C. as having no problems making and keeping friends or responding/obeying adults in authority. R. at 152. She marked J.C. as having a slight problem playing cooperatively with other children, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules (classroom, games, sports), relating experiences and telling stories, using language appropriate to the situation and listener, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, every day conversation. R. at 152. Ms. Arnold noted that J.C.'s "behavior has improved since he has been placed in a difference group and is now sitting closer to [the teacher's] desk." R. at 152. Ms. Arnold also marked that while she understands almost all of J.C.'s speech on a known topic, for an unknown topic she can only understand one-half to two-thirds. R. at 153.

In the area of moving about and manipulating objects, Ms. Arnold marked no problems.

In the area of caring for himself, Ms. Arnold marked J.C. as having no problem being patient when necessary, taking care of personal hygiene, caring for physical needs (e.g., dressing, eating), using good judgment regarding personal safety and dangerous circumstances, and using appropriate coping skills to meet daily demands of school environment. R. at 154. She marked J.C. as having a slight problem with handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood (e.g., calming self), and knowing when to ask for help. R. at 154. She did not add any narrative remarks.

Ms. Arnold did not complete the section on medical conditions and medications/health and physical well-being, R. at 155.

J.C.'s report card was also obtained. R. at 166. In the first nine-weeks of 2013, J.C. had an A in physical education, art, and music. He had a D in social living, math, and reading. He had an F in language arts. His conduct grade in reading was marked as a B, which correlates to "very good." A comment was added that he had low quiz/test scores. In the second 9 weeks of 2013, claimant's grades in social living and math improved to a C. His grade in language improved to a D. He still had a D in reading. His conduct grade in reading improved to an A, with a note that he does not complete work consistently.

A separate print out of J.C.'s courses for the entire 2013-2014 school year shows that his grade in reading was a D throughout the year with a final grade of D. R. at 182. His grade in social living fluctuated from D to C to B and back to D, with a final grade of C. His grade in language arts fluctuated from F, to D for two grading periods and a C for the last grading period, with a final grade of D. And his math grade fluctuated between C and D with a final grade of C. Throughout the year, he received an "A" in each of art, music, and physical education. This print out includes

the following handwritten note: "The above named student does not have an IEP or IAP. No exceptionalities noted at the present time."

<u>Medical Records</u>

J.C. visited pediatrician Dr. Richard LeBeouf on January 11, 2013. R. at 195. His mother reported that his development compared to other children was average. R. at 195. She also reported that he had problems in school. R. at 195. On July 9, 2013, J.C. visited Dr. LeBeouf complaining of a bump on the shoulder and under the chin. R. at 193. Again, Dr. LeBeouf noted J.C.'s development compared to other children was average and noted that he had problems in school. R. at 193. Notes from Dr. LaBeouf's office indicate that Ms. Morgan requested an evaluation for ADHD and dyslexia on September 12, 2013. R. at 189.

Kianca Fernandez, licensed professional counselor, responded to a community based services authorization request on September 23, 2013. R. at 205. She noted a primary diagnosis of ADHD. R. at 207. She assigned a Global Assessment of Functioning ("GAF") score of 48. R. at 208. She noted the following "severe symptoms" reported by Ms. Morgan: J.C. "acts out in school daily" and was recently "put out" for "talking during lecture, standing up without permission, and disrupting class." R. at 209. Fernandez also noted that Ms. Morgan reported J.C. had been suspended from the bus so many times that he would be expelled if suspended one more time; that it takes J.C. two hours to complete one section of his homework; that J.C. had poor focus and concentration and that he was being bullied at school; that he writes words backwards and sometimes upside down; and that J.C. jumps and flips all day and wets the bed twice a month. R. at 209. Fernandez noted J.C.'s strengths as sports and football. <u>Id.</u> "Reading" was noted as a weakness. <u>Id.</u> His grade level and literacy level were noted as 2nd. <u>Id.</u> With regards to required special education services, none were reported. <u>Id.</u> The discharge/treatment plan provided that

7

Fernandez would reassess J.C.'s progress in six months to a year. R. at 211. She noted an intelligence estimate of "borderline." R. at 212. J.C.'s mood was anxious and his behavior was hyperactive and restless. R. at 212.

Stephen R. Cochran, M.D., at The Guidance Center, Inc., performed a psychiatric evaluation of J.C. on November 7, 2013. R. at 215. Ms. Morgan reported to Dr. Cochran that J.C. could not concentrate in school and that he might have to repeat the year because he made Ds and Fs. R. at 215. She reported that teachers frequently tell him to sit still. R. at 215. She reported a history of hyperactivity and that he becomes angry and throws things but is not physically aggressive. R. at 215. Dr. Cochran noted J.C.'s attitude as cooperative, noted his attention span as short, and noted "constantly moving" for non-verbal behavior. R. at 217. Dr. Cochran diagnosed claimant with Axis I- ADHD, Axis II – rule out learning disorder, Axis III- non diagnosis, Axis IV- problems with school, and Axis V – a GAF of 40. R. at 219. The prognosis was "good." R. at 219. Dr. Cochran prescribed 20 gr of Vyvanse and recommended J.C. enroll with The Guidance Center.

At a follow up visit with Dr. Cochran on December 5, 2013, it was reported that J.C. had a partial response but was still hyperactive. R. at 221. Dr. Cochran increased the dosage of Vyvanse to 30 grams. R. at 221. At his follow up appointment on January 30, 2014, Dr. Cochran noted a good response to the increased dosage of Vyvanse. R. at 223.

Licensed professional counselor Shan Flyn at the Guidance Center completed a Childhood Disability Determination Analysis of Functional Areas on March 13, 2014. R. at 198. She noted that she had been working with J.C. for 3 to 4 months. R. at 198. She noted that J.C. engaged in age appropriate activities like playing football, maintaining good hygiene and "same age friends and family." R. at 204. For age-appropriate activities that the child is unable to perform, she noted

that J.C. has difficulties in math and reading, has poor memory, has difficulties concentrating, and cannot focus or sit down. Id.  She noted that his ability to ride a bike is restricted due to his inattentiveness and safety issues. Id.  She added that he had a low reading level and may be dyslexic. Id.  She noted that he has marked difficulties at school with concentration and he has low self-esteem. Id.  She added that he does not read at age appropriate level. Id.  With regards to his ability to initiate, sustain, and complete activities, she noted that he "does not" and that his mother instructs him on completing activities. Id.  With regards to help needed, she noted that he needs to be watched at all times and will not stay on task without supervision at all times. Id.  Flyn assessed each of the six functional domains and concluded that J.C. is moderately limited in "acquiring and using information," "caring for himself" and "health and physical well being." R. at 199-203. She indicated he had marked limitation in "attending and completing tasks" and "interacting and relating with others." Id.  She noted no limitation in "moving about and manipulating objects." Id.

Dr. Vimala Mascarenhas of Sunrise Pediatric Associates performed an evaluation of J.C. at the request of Disability Determination Services on June 26, 2014. R. a 227. Ms. Morgan reported to Dr. Mascarenhas that J.C. had been taking Vyvanse, that he had done well on the 30 gram dosage, and that his grades had improved. R. at 227. Dr. Mascarenhas opined that J.C.'s growth and development are appropriate for his age. R. at 229. She noted that he was "a little fidgety in this office, but was cooperative for the examination and answered age appropriate questions." Id.  She added that he was doing well in school and making average grades. Id.  She also noted that he was receiving appropriate care from Dr. Cochran for ADHD. Id.

On August 11, 2014, Dr. Cochran noted J.C.'s judgment and insight were poor by history and his attention and concentration were noted to have decreased. R. at 234. Dr. Cochran assessed J.C. as symptomatic off medication and recommended restarting medication. R. at 234.

A report by Erica Hauben, Licensed Clinical Social Worker, dated August 27, 2014, reports that J.C. denies an intent to hurt himself or others "but is unable to give an explanation as to why he frequently uses this statement." R. at 235. She concluded that "[i]t is reasonable to believe that without continued treatment, client will lose any gains achieved, and that without assistance in learning coping and self soothing skills, that his behavior could escalate and become harmful physically, emotionally and developmentally." R. at 235.

At a follow up visit with Dr. Cochran on October 23, 2014, claimant's mood was euthymic and he was assessed stable. R. at 233. Dr. Cochran assessed J.C. as symptomatic when off medication and recommended continuing medication. R. at 233.

On November 20, 2014, Dr. Cochran reported claimant's mood was euthymic. R. at 232. Dr. Cochran noted he was "doing fine" as long as he was on his medication. R. at 232. He assessed J.C. as stable and recommended continuing medication. R. at 232.

Dr. Judith Levy, PhD., M.P., reviewed J.C.'s disability application and determined that J.C. is not disabled. She found no limitations in the domains of "interacting and relating with others," "moving about and manipulation of objects," "caring for oneself," and "health and physical well-being." R. at 53.  She determined his limitations in "acquiring and using information" and "attending and completing tasks" were less than marked. R. at 54.

Dr. Levy noted a history of treatment for dyslexia and ADHD, and determined that "[a]lthough he has some problems with attention and hyperactivity, he has been prescribed medications to aid this condition." R. at 54. She assessed the statements of Ms. Morgan regarding J.C.'s symptoms to be partially credible and inconsistent with the medical findings because the prescribed "medications are working and his condition is improved." R. at 54. Dr. Levy concluded that J.C. "is able to understand and follow instructions and he can learn." R. at 54.

**<u>Decision of the Administrative Law Judge</u>**

The ALJ determined that J.C. was born on September 16, 2006, and was, therefore, a "school-age child" at the time the application for benefits was filed, as well as at the time the ALJ made his decision. At Step 1, the ALJ determined that J.C. had not engaged in substantial gainful activity since the date of application, which was September 4, 2013. Proceeding to Step 2, the ALJ concluded that J.C. has the severe condition of attention deficit hyperactivity disorder (ADHD). Thus, the ALJ moved on to Step 3. The ALJ determined that J.C. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F. R. Part 404, Subpart P, Appendix 1. The ALJ further determined that J.C. does not have an impairment or combination of impairments that functionally equals the severity of the listings. In making this conclusion, the ALJ considered each of the six functional equivalence domains. The ALJ determined that J.C. had a less than marked limitation for functioning in the domains of "acquiring and using information" and "attending and completing tasks." The ALJ determined that J.C. had no limitation in the domains of "interacting and relating with others," "moving about and manipulating objects," "caring for oneself," and "health and physical well-being." Thus, because J.C. did not have a marked limitation in at least two of the six domains or an extreme limitation in one of the six domains, the ALJ concluded that J.C. has not been disabled as defined by the Act since the date of his application.

**Statement of Issues on Appeal**

Issue No. 1.    Whether the ALJ erred in finding that the claimant's ADHD did not meet Listing 112.11.

Issue No. 2.    Whether the ALJ erred in finding the claimant's functioning in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating to others" were not markedly limited.

**Analysis**

**I.  Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is more than "a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues de novo, or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

**II.    Entitlement to Benefits under the Act.**

A child under the age 18 is "disabled" under the Act if the child has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see 20 C.F.R. § 416.924. It is the claimant's burden to prove that he meets the definition of disabled. Fraga v. Bowen, 810 F.2d 1296, 1301–02 (5th Cir. 1987).

The ALJ employs the following three-step sequential process in evaluating childhood disability cases:  (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the severe impairment(s) meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.924(a)-(d). In evaluating functional equivalence at Step 3, the ALJ considers how a child functions in his activities in terms of six domains of functioning. 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id.  Functional equivalence means that the impairment is of listing-level severity and results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain is when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(2). A "marked" limitation is "'more than moderate' but

'less than extreme.'" Id.    An "extreme" limitation interferes *very* seriously with the child's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3) (emphasis added). An "extreme" limitation is "more than marked," and is the rating given "to the worst limitations," however, the regulations point out that an extreme limitation "does not necessarily mean a total lack or loss of ability to function." Id.

The regulations require use of the "whole child" approach, which means that before analyzing each domain, the decision maker first considers how the child's functioning is affected during all of the child's activities. 20 C.F.R. § 416.926a(b); Id. § 416.926a(c)    Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach, SSR 09-1P (S.S.A. Feb. 17, 2009). As explained in the regulations,

> Any given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from [the child's] impairment(s) in any affected domain(s).

20 .F.R. § 416.926a(c).

### III.    Plaintiff's Appeal.

*Issue No. 1.    Whether the ALJ erred in finding that the claimant's ADHD did not meet Listing 112.11.*

Counsel for J.C. insists that the ALJ should have found that J.C.'s ADHD met Listing 112.11. To find that J.C.'s condition meets or medically equals Listing 112.11 for Attention Deficit Hyperactivity Disorder, the ALJ must find the requirements in both subsection A and B have been met. Subsection A of Listing 112.11 requires "Medically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity." 20 C.F.R. Pt. 404, Subpt. P, App 1, Listing 112.11(A). For children over the age of 3 but under the age of 18, subsection B requires at least 2 of the following:

a. *Marked impairment in age-appropriate cognitive/communicative function*, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . . .; or

b. *Marked impairment in age-appropriate social functioning*, documented by history and medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and, including, if necessary, the results of appropriate standardized tests; or

c. *Marked impairment in age-appropriate personal functioning*, documented by history and medical findings including consideration of historical and other information from parents or other individuals who have knowledge of the child, or when such information is needed and available) and, including, if necessary, the results of appropriate standardized tests; or

d. *Marked difficulties in maintaining concentration, persistence, or pace*.

Id.  Listing 112.11(B), 112.02(B) (emphasis added).

As evidence of inattention, J.C.'s counsel points to J.C.'s teacher's notes indicating J.C. has trouble concentrating and needs redirection, his counselor's notes that he has marked difficulties at school with concentration, and his mother's testimony that she must remind him to complete tasks, such as his homework. J.C.'s impulsiveness is shown, counsel insists, by his doctor's notes that he has experienced outbursts and has adopted a habit of compulsive cleaning, and J.C.'s mother's testimony that J.C. is impulsive. As evidence of his hyperactivity, counsel points to doctor's notes that J.C. was still very hyperactive.

However, the cited evidence does not support a finding of marked inattention, impulsiveness, and hyperactivity. The doctor's notes to which this Court is directed for evidence of hyperactivity and impulsiveness are from J.C.'s December 5, 2013, visit with Dr. Cochran when Dr. Cochran determined that the dosage of Vyvanse should be increased to 30 grams. Records of Dr. Cochran after the increased dosage do not appear to indicate that J.C. was "still very hyperactive." In fact, at the follow up visit on January 30, 2014, Dr. Cochran noted a good response

to the increase.  In October and November 2014, he assessed J.C.'s condition as stable. Dr. Cochran's records do not support a finding of marked hyperactivity or marked impulsiveness.

J.C.'s mother testified that J.C. does not do his chores and fights with his siblings, and in the Function Report she noted that he cannot keep busy on his own or finish things he starts. The Court notes that in his Function Report, Ms. Morgan also reported that J.C. completes his chores most of the time. While J.C.'s mother is familiar with his behavior and her testimony and report indicate some problems with hyperactivity, impulsiveness, and inattentiveness, it does not amount to medical evidence of marked hyperactivity, impulsiveness, and inattentiveness.

The counselor's notes that J.C. cites as evidence of marked inattention appear to be based on J.C.'s mother's report that he "acts out" and was removed from class for disruptions, not on the counselor's own observations. Moreover, these reports regarding J.C.'s inability to concentrate at school are contradicted by J.C.'s school records. First, there are no reports of disciplinary measures, such as suspensions, in his school record. The only conduct grade on the only report card in the record showed a B (correlating to "very good") in the first nine weeks and an A in the second nine weeks. Second, his teacher, Ms. Arnold, reported that J.C. has no problem working without distracting himself or others, and only a slight problem paying attention when spoken to, focusing long enough to finish an assigned activity or task, and completing class and homework assignments. The Court notes that there is some indication that J.C. has problems with concentration and focus: Ms. Arnold wrote that J.C. needs "redirecting at times to keep him focused and on task" and J.C.'s report card included the note that he does not complete work consistently. However, these notes in combination with the rest of the school records are not sufficient to result in a finding that J.C. experiences ***marked*** inattention. Indeed, the only areas in which Ms. Arnold noted a serious problem were J.C.'s ability to provide organized oral

explanations and adequate descriptions and his ability to express ideas in written form. The only areas in which she noted obvious problems were his ability to read and comprehend written material, understand and participate in class discussion, and applying problem-solving skills in class discussions. Thus, J.C.'s school records cannot support a finding that J.C. experiences suffer marked inattention, marked hyperactivity, and marked impulsiveness.[1]

Although the ALJ did not provide details for the analysis that led to his conclusion that J.C.'s impairment does not meet or medically equal one of the listed impairments (proceeding instead to a detailed analysis of whether J.C.'s impairment functionally equals the severity of one of the Listings), it is clear from the evidence thoroughly reviewed by the ALJ in the functional analysis that there is no evidence to support a finding that J.C.'s condition meets or medically equals Listing 112.11. The ALJ's conclusion is supported by substantial evidence.

Issue No. 2.    *Whether the ALJ erred in finding the claimant's functioning in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating to others" were not markedly limited.*

J.C.'s counsel next challenges the ALJ's analysis of J.C.'s functioning. The ALJ found J.C. had less than a marked limitation in the domains of "acquiring and using information," "attending and completing tasks," and "interacting and relating to others." Citing the report of J.C.'s teacher and the Guidance Center assessment, J.C.'s counsel argues that a marked limitation should have been found in each of these domains.

---

[1] Because there is no evidence to support a finding that J.C.'s impairment meets the requirements subsection (A), there can be no finding that he meets Listing 112.11. Thus, the Court does not consider whether J.C.'s impairment meets the requirements of subsection (B). Moreover, as to subsection (B), J.C.'s counsel only focuses on J.C.'s purported impairment in social functioning. As discussed further below, substantial evidence supports the ALJ's conclusion that J.C. has no impairment in relating to or interacting with others. Similarly, he does not have a marked impairment in social functioning.

While J.C. challenges the ALJ's findings in three of the six domains (as further discussed below), the ALJ made clear in his decision that he began his analysis with a consideration of the "whole child." That is, he first considered J.C.'s functioning in all settings at all times, which is reflected in his summary of all the record evidence before engaging in analysis of J.C.'s functioning in each of the six domains. As to each of the three domains challenged by J.C.'s counsel, as described below, the ALJ's findings are supported by substantial evidence. Indeed, the record reflects that while J.C. has ADHD, he is stable while on medication. Because substantial evidence supports the finding that J.C. does not have marked limitations in at least two of the functional domains or an extreme limitation in one of the domains, the ALJ's determination that J.C. is not disabled under the Act must be affirmed.

   a.    *Acquiring and Using Information*

As the Commissioner points out, the domain of "acquiring and using information" involves how well the child acquires or learns information and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). The regulations describe this domain for "school-age children," (defined as children from 6 to the attainment of age 12) as follows:

> When [a child is] old enough to go to elementary and middle school, [he] should be able to learn to read, write, and do math, and discuss history and science. [He] will need to use these skills in academic situations to demonstrate what [he has] learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. [He] will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). [He] should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his] own ideas, and by understanding and responding to the opinions of others.

Id.  § 416.926a (g)(2)(iv). The regulations also provide examples of limited functioning in this domain, with the caveat that these examples are non-exclusive and do not necessarily describe a marked or extreme limitation:

> (i) [The child does] not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
> (ii) [The child] cannot rhyme words or the sounds in words.
> (iii) [The child has] difficulty recalling important things [he or she] learned in school yesterday.
> (iv) [The child has] difficulty solving mathematics questions or computing arithmetic answers.
> (v) [The child] talk[s] only in short, simple sentences and [has] difficulty explaining what [he or she] mean[s].

Id.  § 416.926a (g)(3). Whether an example applies depends on a child's age and developmental stage. Id.

As evidence of J.C.'s limitation in the domain of "acquiring and using information," J.C.'s counsel points to J.C.'s school report card, which shows that over the course of 2013-2014, J.C. earned Ds in social living, math and reading and an F in language arts. Counsel also notes that J.C.'s teacher reported that J.C. has an obvious problem reading and comprehending written material, understanding and participating in class discussions, and applying problem-solving skills in class discussions. His teacher reported J.C. as having a serious problem providing organized oral explanations and adequate descriptions and expressing ideas in written form.

J.C.'s counsel fails to consider all the evidence regarding the domain of "acquiring and using information." For example, the ALJ noted that J.C. is enrolled in a regular education setting. Indeed, a handwritten note on his report card states that J.C. "does not have an IEP or IAP. No exceptionalities noted at the present time." R. at 182. Further, the ALJ observed that J.C.'s grades improved in math and ELA between the first and second nine-weeks. J.C.'s mother confirmed this when she reported to Dr. Mascarenhas that with the 30 gram dosage of Vyvanse, J.C. had done

well and his grades had improved. The ALJ also noted that J.C. received an A in conduct. As the ALJ pointed out, J.C.'s teacher reported that J.C. works independently but requires occasional redirection to stay on task and knows when to ask questions to clear up confusion. Further, the Court notes that J.C.'s teacher did not indicate J.C. had a very serious problem in any of "acquiring and using information" examples, and she found he had only a slight problem comprehending oral instructions, understanding school and content vocabulary, comprehending and doing math problems, learning new material, recalling and applying previously learned material.  In making his determination, the ALJ also relied on the conclusions of J.C.'s psychiatrist, Dr. Cochran, who found J.C.'s hyperactivity improved with the increased dosage of Vyanese and characterized J.C.'s ADHD as stable. The ALJ also cited the opinion of the state agency psychologist who reviewed J.C.'s application and records and determined that J.C.'s limitation in the domain of "acquiring and using information" was less than marked. While the record indicates that J.C. has some problems "acquiring and using information," to be "marked" the impairment must interfere "seriously with the child's ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(2). J.C.'s improving grades, the report of his teacher, and the assessment of his psychiatrist that his impairment does not reach this level. The ALJ's conclusion that J.C.'s limitations in this domain are less than marked is supported by substantial evidence.

b.    *Attending and Completing Tasks*

The domain of "attending and completing tasks" involves consideration of how well a child focuses and maintains attention and how well he begins, carries through and finishes activities, including the pace of performance and the ease with which he changes activities. 20 C.F.R.§ 416.926a(h). The regulations explain that school-age children:

> should be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize [their] school materials, and complete

classroom and homework assignments. [They] should be able to concentrate on details and not make careless mistakes in [their] work (beyond what would be expected in other children [their] age who do not have impairments). [They] should be able to change [their] activities or routines without distracting [themselves] or others, and stay on task and in place when appropriate. [They] should be able to sustain [their] attention well enough to participate in group sports, read by [themselves], and complete family chores. [They] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

Id. § 416.926a(h)(2)(iv). The regulations also provide examples of limited functioning in the domain of "attending and completing tasks," although they are non-exclusive and do not necessarily describe marked or extreme limitations:

(i) [The child is] easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
(ii) [The child is] slow to focus on, or fail[s] to complete activities of interest to [the child], e.g., games or art projects.
(iii) [The child] repeatedly become[s] sidetracked from [his or her] activities or [he or she] frequently interrupt[s] others.
(iv) [The child is] easily frustrated and give[s] up on tasks, including ones [he or she is] capable of completing.
(v) [The child] require[s] extra supervision to keep [him or her] engaged in an activity.

Id. § 416.926a(h)(3).

The ALJ's determination that J.C.'s impairments in the domain of "attending and completing tasks" are less than marked is supported by substantial evidence. As described by the Court above, a "marked" impairment is more than moderate. It is an impairment that "interferes seriously with the child's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). In concluding that J.C.'s impairment in this domain was less than marked, the ALJ considered that J.C.'s teacher found only slight problems in this domain. Indeed, Ms. Arnold noted J.C. had no problems carrying out single-step instructions, waiting to take turns, or working without distracting self or others. For the remaining examples (like carrying out multi-step instructions, changing activities, and focusing long enough to finish a task), Ms. Arnold

21

reported that J.C. had only slight problems. Further the ALJ considered that J.C.'s school records show that he was not assessed for 504 accommodations "which would have allowed for extra time for test taking/assignment completion, small group instruction, repeated instructions and [similar] accommodations customarily granted for children with ADHD." As in the domain of "acquiring and using information," the ALJ noted that J.C.'s conduct grade had improved from a B to an A. The ALJ again observed that Dr. Cochran had assessed J.C.'s ADHD as stable and his hyperactivity as improved with the increased dosage of Vyvanse. Further, the state agency psychologist who reviewed J.C.'s records concluded that J.C.'s limitation in the area of "attending and completing tasks" was less than marked.

J.C.'s counsel insists that the ALJ should have found marked impairments in the domain of "attending and completing tasks." Counsel recognizes that J.C.'s teacher reported that he has either no problem or only a slight problem in each of the fifteen activities listed in the "attending and completing tasks" section of her report. However, counsel insists that because he has a slight problem in so many of these activities (nine of the fifteen), he should nonetheless be found to have a marked limitation in the domain. Counsel offers no support for this argument. J.C.'s counsel further submits that J.C.'s mother's testimony corroborates a finding that J.C. cannot keep busy on his own or finish things he starts. But her testimony is not supported by the school record or the records of J.C.'s psychiatrist. Further, her testimony is not entirely consistent with the Function Report where she noted that J.C. works on arts and crafts projects, completes homework, and completes chores most of the time. Further, J.C.'s mother seemed to admit that when taking his medication, J.C.'s conditions were improved: though she testified that J.C. still does not listen, she recognized that his sudden movements had decreased. J.C.'s mother also reported to Dr. Mascarenhas that J.C. had done well on 30 grams of Vyvanse.

J.C.'s counsel also urges this Court to rely on the Determination Analysis of Functional Areas completed by licensed personal counselor Shan Flyn at the Guidance Center who concluded that J.C. has a marked limitation "attending and completing tasks." The ALJ correctly determined that Flyn is not considered or deemed a medical source under the regulations. Under Social Security Ruling 06-3p, which is applicable to J.C.'s claim, licensed personal counselors are not listed as "acceptable medical sources."[2] Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P (S.S.A. Aug. 9, 2006). Instead, licensed physicians and licensed or certified psychologists are "acceptable medical sources." Only "acceptable medical sources" can give medical opinions, and evidence from "acceptable medical sources" is necessary "to establish the existence of a medically determinable impairment." Id. The ALJ also observed that Flyn had only known J.C. for about 3-4 months. The ALJ appropriately gave no weight to Flyn's report as a medical opinion. While the ALJ might have considered Flyn's report as evidence from an "other source," information from such sources "cannot establish the existence of medically determinable impairment." Id. Moreover, as an "other source," Flyn's observations are outweighed by the conclusions of Dr. Cochran, Dr. Levy, and the report of J.C.'s teacher who observed his behavior daily.

In spite of the evidence cited by J.C.'s counsel, the ALJ's determination that J.C. has less than marked limitations in the domain of "attending and completing tasks" is supported by substantial evidence.

---

[2] The Court notes that SSR 06-3p was rescinded on March 27, 2017, effective for claims filed on or after that date. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01. The regulations in effect for claims filed on or after March 27, 2017, provide a new framework for consideration of evidence, including medical opinions.

    *c.*    *Interacting and Relating to Others*

The domain of "interacting and relating to others," concerns the child's ability to initiate and sustain emotional connections with others, develop the use of language, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926(a)(i). The regulations explain that school-age children (ages 6 to 12):

> should be able to develop more lasting friendships with children who are [the same] age. [The child] should begin to understand how to work in groups to create projects and solve problems. [The child] should have an increasing ability to understand another's point of view and to tolerate differences. [The child] should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

Id.  § 416.926a(i)(2)(iv). The regulations provide the following list of examples of limited functioning in the domain of "interacting and relating to others,"

> (i) [The child does] not reach out to be picked up and held by [the child's] caregiver.
> (ii) [The child has] no close friends, or [the child's] friends are all older or younger than [the child].
> (iii) [The child] avoid[s] or withdraw[s] from people [the child] know[s], or [the child is] overly anxious or fearful of meeting new people or trying new experiences.
> (iv) [The child has] difficulty playing games or sports with rules.
> (v) [The child has] difficulty communicating with others; e.g., in using verbal and nonverbal skills to express [oneself], carrying on a conversation, or in asking others for assistance.
> (vi) [The child has] difficulty speaking intelligibly or with adequate fluency.

Id.  § 416.926a(i)(3). As in the other domains, the list is non-exclusive and does not necessarily describe a marked or extreme limitation. Id.  Nor do all examples apply in all developmental stages. Id.

The ALJ's determination that J.C. has no limitation in the domain of "interacting and relating with others" is supported by substantial evidence. While the ALJ noted that J.C.'s mother testified that J.C. fought with family members and school peers and had received verbal warnings at school for poor conduct, the ALJ found this testimony contradicted by the school records and

the records of J.C.'s psychiatrist. As the ALJ pointed out, Ms. Arnold noted "improved" behavior after J.C. had been placed in a different group and sat near to her desk. The ALJ again noted that J.C. received an A for conduct in the second nine weeks. The ALJ further observed that J.C.'s school record contains no disciplinary logs, records, or violations related to J.C.'s behavior at school. Further, the ALJ noted that Dr. Cochran's records contain no notes indicating any problems with anger and fighting. Instead, and as noted before, Dr. Cochran assessed J.C.'s ADHD as stable and found he had responded well to a 30mg dosage of Vyvanse. The Court notes that J.C.'s mother's testimony is also contradicted by the Function Report where she reported that J.C. has friends his own age, can make new friends, generally gets along with her and other adults, and plays teams sports.  Further, it should be noted that Ms. Arnold marked J.C. as having no problems making and keeping friends or responding/obeying adults in authority. She reported he had only slight problems with  playing cooperatively with other children, seeking attention appropriately, expressing anger appropriately, asking permission appropriately, following rules (classroom, games, sports), relating experiences and telling stories, using language appropriate to the situation and listener, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, every day conversation.

J.C.'s counsel again urges this Court to reverse the ALJ's findings because of J.C.'s mother's testimony and the report of counselor Flyn. As noted above, J.C.'s mother's testimony is inconsistent with both her own reports, J.C.'s school record, the report of J.C.'s teacher and the records of Dr. Cochran. And, as addressed in the previous section, the ALJ properly refused to consider Flyn's report as a medical opinion. On its own, this report cannot establish a disability. Moreover, although Flyn concluded that J.C. had a marked limitation in "interacting and relating to others," Flyn also noted that he could engage in age appropriate activities like playing football

and playing with "same age friends"—each an indication that J.C. can interact appropriately with others. Further, Flyn's other narrative descriptions do not indicate any problems interacting or relating to others.

The ALJ appropriately considered all the evidence and his conclusion that J.C. has no limitation in interacting or relating to others is supported by substantial evidence.

       *d.*     *Conclusion on Functional Domains*

J.C. only challenges the ALJ's conclusion on three of the six domains. As to the other three domains, the ALJ found no limitations. As this Court has explained above, the ALJ's conclusions that J.C. has less than a marked limitation in "acquiring and using information" and "attending and completing tasks" and no limitation in "interacting and relating to others" are supported by substantial evidence. Accordingly, the ALJ's conclusion that J.C. does not functionally meet listing 112.11 because he does not have a marked limitation in at least two domains, nor an extreme limitation in one domain, is supported by substantial evidence. The ALJ's determination that J.C. is not disabled under the Act must be affirmed.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 14) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 16) be GRANTED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).


New Orleans, Louisiana, this 29th day of June, 2017.


<u>Janis van Meerveld</u>
Janis van Meerveld
United States Magistrate Judge